[Cite as *Ostigny v. Brubaker*, 2024-Ohio-384.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| AMY BETH OSTIGNY, et al., | : | CASE NO. CA2023-03-026 |
| Appellants, | : | |
| | : | O P I N I O N<br>2/5/2024 |
| - vs - | : | |
| | : | |
| ROBERT BRUBAKER, et al., | : | |
| Appellees. | : | |

CIVIL APPEAL FROM MASON MUNICIPAL COURT
Case No. 21CVI00002

Amy Beth Ostigny and David Ostigny, pro se.

Robert Brubaker and Sherry Brubaker, pro se.

**BYRNE, J.**

{¶ 1} Amy Beth and David Ostigny ("the Ostignys") appeal from the decision of the Mason Municipal Court that denied their claim for breach of contract and granted the counterclaim for breach of contract brought by Sherry and Robert Brubaker ("the Brubakers"). For the reasons discussed below, we affirm the trial court's decision.

## I. Factual and Procedural Background

{¶ 2} The Ostignys operate a home renovation business. The Brubakers entered into two contractual agreements with Amy Beth Ostigny to renovate portions of the Brubakers' home in Warren County, Ohio. A dispute arose after the Brubakers became dissatisfied with the home renovation work and then refused to pay the Ostignys, who then walked off the job.

{¶ 3} Afterwards, the Ostignys asserted a claim in the Mason Municipal Court, seeking $5,500 in damages for the Brubakers' alleged breach of contract.[1] The Brubakers answered and counterclaimed, asserting a claim of breach of contract and a claim for violations of the Ohio Consumer Sales Practices Act ("OCSPA").

{¶ 4} The parties appeared for a two-day trial before a magistrate, which trial occurred in May and June 2021. The parties appeared pro se.

{¶ 5} On the first day of trial, David Ostigny testified and introduced exhibits. Next, the Brubakers testified and introduced exhibits. David Ostigny then briefly cross-examined Robert Brubaker before the court continued the hearing in progress to the second trial day.[2]

{¶ 6} On the second day of trial, David Ostigny resumed his cross-examination of Robert Brubaker, which cross-examination lasted for the majority of the day. At the conclusion of this cross-examination, the Brubakers offered a few additional exhibits for the court's consideration.

{¶ 7} The court then asked David Ostigny if he or Amy Beth Ostigny wished to take

---

1. Actually, Amy Beth Ostigny originally filed a small claims complaint against the Brubakers in the County Court of Warren County. She subsequently moved to add David Ostigny as a party-plaintiff, which motion the court granted. After a full trial in the County Court, the court determined that, due to the geographic location of the Brubakers' residence, the proper venue for the dispute was in the Mason Municipal Court. The court thereafter transferred the case to the Mason Municipal Court.

2. The out-of-order procedures used here were suggested by the trial court to allow each side to tell their side of the story before cross-examination. No parties objected to the procedure. The court reserved the Brubakers' right to cross-examine David Ostigny, but they never sought to do so.

the stand and offer any rebuttal evidence. David Ostigny indicated he had many things he wanted to say but requested a continuance because he was not prepared to proceed and was "exhausted."

{¶ 8} Based on David Ostigny indicating that he had rebuttal evidence but was not prepared to proceed, the court suggested that in lieu of testimony, the parties could submit post-trial affidavits outlining any factual differences they claimed. The court explained that David Ostigny could "type up a series of statements that you think are factually different from what they said." David Ostigny indicated he did not "write very well" and would prefer a continuance, but if the court would not grant a continuance, he would rather just proceed to closing arguments and verbally discuss his disagreements. The court then heard the parties' closing arguments.

{¶ 9} The magistrate later issued a written decision. The fundamental facts of the underlying dispute are ultimately not at issue in this appeal, but we will briefly discuss the magistrate's factual findings and legal conclusions to provide context.

{¶ 10} The magistrate found that in August 2020, Amy Beth Ostigny and the Brubakers signed two contracts for renovation work to the Brubakers' home. [3] The first contract was for a kitchen remodel and the second contract was to remove and replace carpet. The total labor and material costs for the kitchen remodel was $15,000, to be paid to Amy Beth Ostigny in three installments (consisting of a $7,500 down payment, $3,750 due at the halfway point of the project, and $3,750 due upon completion). The total labor and material costs for the carpet project was $1,900, to be paid in two installments.

---

3. The record suggests that the Ostignys operated the business as a partnership. Though the contracts were signed by the Brubakers and Amy Beth Ostigny, and the checks from the Brubakers were made to Amy Beth Ostigny personally, it appears that David Ostigny was principally in charge of the remodel aspect of the business, working as a general contractor. He stated at the trial that he was the "one who made all the decisions." There was no discussion in the magistrate's decision concerning the issue of David Ostigny's contractual liability. Nor has that issue been raised on appeal, and we simply note it here.

{¶ 11} Work commenced but much of the work was not performed to the Brubakers' satisfaction.  On the other hand, the Ostignys found the Brubakers difficult to work with and also believed that they were demanding more work than the parties had agreed would be performed.

{¶ 12} In September 2020, the parties met in an effort to settle their differences concerning the scope of work and to achieve final completion of the contract.  At that time, the Brubakers had made the first two payments on the kitchen remodel contract, but were unwilling to pay the remaining balance of $3,750 with so much work remaining to be completed or not completed to their satisfaction.  The Brubakers also had only paid for approximately half of the carpet job, which was only partially completed.

{¶ 13} The parties reached no agreement at the meeting.  The Ostignys performed no further work on the home and subsequently placed a mechanic's lien on the Brubakers' home.

{¶ 14} With respect to the Ostignys' claim for breach of contract, the magistrate noted that they were requesting the final payment on the kitchen remodel contract of $3,750.  However, the court found that the Brubakers were justified in withholding this final payment based on the Ostignys not completing contracted work.  Accordingly, the court found that the Ostignys had not met their burden to prove a breach of contract by the Brubakers.

{¶ 15} With regard to the Brubakers' counterclaim for breach of contract, the magistrate found that Ostignys had breached their agreement with the Brubakers by failing to complete the kitchen remodel project and the carpet project.  The magistrate further found that the Brubakers had incurred damages as a result of the breach—specifically, certain costs to complete the project or to repair items damaged by the Ostignys' subcontractors.  The magistrate awarded the Brubaker's $5,672.93 in contractual damages.  The magistrate also noted that the Brubakers had submitted no evidence in support of their claim for a

violation of the OCSPA and stated that "any relief for the Brubakers must come under" the breach of contract claim. The magistrate's decision impliedly dismissed the OCSPA claim.

{¶ 16} The Ostignys objected to the magistrate's decision. The trial court overruled their objections and adopted the magistrate's decision. The Ostignys appealed and raised five assignments of error, which we will review in turn.

## II. Law and Analysis

### A. The Parties' Status as Pro Se Litigants

{¶ 17} The parties are representing themselves in this appeal. We pause briefly to note that "pro se litigants are expected, as attorneys are, to abide by the relevant rules of procedure and substantive laws, regardless of their familiarity with the law." *Fontain v. H&R Cincy Properties, L.L.C.*, 12th Dist. Warren No. CA2021-02-015, 2022-Ohio-1000, ¶ 26. "As a result, pro se litigants are presumed to have knowledge of the law and correct legal procedures so that they remain subject to the same rules and procedures to which represented litigants are bound." *Havens v. Havens*, 12th Dist. Fayette No. CA2022-01-002, 2022-Ohio-3103, ¶ 18. "In other words, '[p]ro se litigants are not to be accorded greater rights and must accept the results of their own mistakes and errors, including those related to correct legal procedure.'" *Perelman v. Meade*, 12th Dist. Warren No. CA2021-06-054, 2021-Ohio-4247, ¶ 22, quoting *Cox v. Zimmerman*, 12th Dist. Clermont No. CA2011-03-022, 2012-Ohio-226, ¶ 21.

### B. Denial of Request for Continuance

{¶ 18} The Ostignys' first assignment of error states:

> THE TRIAL COURT ABUSED ITS DISCRETION BY NOT CONTINUING THE CASE IN PROGRESS SO OSTIGNY WOULD HAVE A CHANCE TO CROSS EXAMINE MR. AND MS[.] BRUBAKER AND REBUT THEIR TESTIMONY AND HUNDREDS OF PAGES OF EXHIBITS[.]

{¶ 19} The Ostignys argue that the trial court abused its discretion by "cutting the trial short before [David Ostigny's] opportunity to cross examine and rebut Brubaker's testimony." The Ostignys do not offer more than this statement in articulating their argument in the argument portion of their brief. However, in the statement of facts, the Ostignys stated that the court "cut the trial short" without giving David Ostigny time to "finish cross examining [Robert Brubaker] or even start to crossexamine [sic] [Sherry Brubaker]. * * * [David Ostigny] needed to fully cross examine the Brubakers and to rebut their testimony. [David Ostigny] asked for the court to continue the trial in progress but the court overruled it."

{¶ 20} The decision to grant or deny a continuance is entrusted to the sound discretion of the trial court. *Lykins v. Hale*, 12th Dist. Clermont No. CA2022-07-037, 2023-Ohio-752, ¶ 37. Accordingly, we review the trial court's decision for an abuse of discretion. *Id*. An abuse of discretion implies the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 21} We have reviewed the entire record and specifically the portion of the trial where, as the Ostignys characterize it, the magistrate "cut the trial short." The record reveals that the trial did not proceed as the Ostignys describe. In fact, David Ostigny spent the majority of the second day of trial cross-examining Robert Brubaker. He then ended his cross-examination, stating, "That's all I have." The magistrate asked if there was any more evidence that either side wanted to present. David Ostigny did not respond, but Sherry Brubaker responded that she did have more evidence and offered an additional exhibit and discussed the exhibit briefly.

{¶ 22} The magistrate then turned to the Ostignys, and -- noting that it was getting later in the day -- asked them if either wanted to provide any testimony in rebuttal, "factual things that you want to rebut that you've heard that you disagree with?" David Ostigny replied, "There's too many. I would ask for a continuance again." The magistrate suggested

that if there were "too many" issues, David Ostigny should pick two "big ones" and tell the court about those factual disagreements. David Ostigny responded, "Should I just close?" referring to closing argument. The magistrate replied that he would prefer to hear facts, not argument, and again asked David Ostigny to articulate what facts he wanted to rebut.

{¶ 23} David Ostigny then discussed his disagreements with Robert Brubaker's testimony concerning the costs of removing a countertop. He also referred to one of his exhibits. After listening to David Ostigny's discussion of this issue, the magistrate then asked David Ostigny if he had any other factual disagreements, noting that "we've got some time here."

{¶ 24} David Ostigny then stated that there were "so many" factual disagreements and he again asked for a continuance, explaining that he was "exhausted." The magistrate responded that he was not inclined to continue the trial in progress again, but stated that he would allow the parties to instead file affidavits concerning any factual differences they wanted to highlight. The magistrate then explained the process of writing affidavits.

{¶ 25} After this explanation, David Ostigny stated, "Your Honor, I would rather just close and get it over with." The magistrate continued suggesting that David Ostigny should consider filing an affidavit. David Ostigny resisted this suggestion and complained that if the Brubakers were also permitted to file an affidavit, that they would file a 300-page document. The magistrate offered to put a page limit on any such filing. But David Ostigny did not indicate any willingness to file an affidavit. Instead, he reiterated his request for a continuance of the trial, stating that he would "get that recording" of the trial and would be "really prepared next time."

{¶ 26} The Brubakers both objected to another continuance of the trial. Sherry Brubaker stated that she had already taken four days off from work for this dispute and that she would like the matter resolved. The Brubakers noted that on the previous day of trial,

the Ostignys had not appeared on time.

{¶ 27} The magistrate then asked David Ostigny if he wanted to give a closing argument, as he had earlier indicated. He responded, "that's not what I really want to do. I really want a continuance. But if I have to do something, that's what I want to do is skip the testifying and give you a closing." The parties then presented their closing arguments.

{¶ 28} Upon review, we do not find that the magistrate abused his discretion in declining to continue the trial. Contrary to the Ostignys' assertion that the magistrate denied him the ability to cross-examine the Brubakers or "cut short" his cross-examination, David Ostigny spent nearly the entire allotted time of the second day of trial cross-examining Robert Brubaker. And upon concluding cross-examining Robert Brubaker, he stated that he was done, and he did not request to cross-examine Sherry Brubaker.

{¶ 29} The magistrate provided the Ostignys with multiple opportunities to take the stand and present rebuttal evidence. David Ostigny briefly provided some testimony, but then claimed he could no longer proceed due to exhaustion. The magistrate then offered a reasonable procedure for submitting any additional rebuttal evidence, through the filing of affidavits. David Ostigny did not accept this opportunity.

{¶ 30} The Brubakers objected to a continuance on the basis that the case had already required them to be off work for four days and that the Ostignys had not appeared on time on another day of trial.

{¶ 31} The court went over and above to accommodate the Ostignys, including providing them with the opportunity to present rebuttal evidence at the trial and also providing a procedure to submit post-trial supplemental affidavits. The Ostignys did not utilize any of these opportunities. Furthermore, we agree that a six-hour trial, over two days, was more than sufficient to permit both sides to present evidence given the claims and factual issues in this case. That David Ostigny was not sufficiently prepared to present his

- 8 -

case on the second day of trial was not the fault of the trial court.

{¶ 32} Moreover, the Ostignys have never articulated what rebuttal evidence they would have sought to admit at trial. Thus, it would be entirely speculative for this court to determine that they suffered any prejudice based on the inability to offer rebuttal evidence.

{¶ 33} For these reasons, we find that the trial court did not abuse its discretion in denying David Ostigny's request for a continuance. We overrule the Ostignys' first assignment of error.

### C. Remaining Assignments of Error

{¶ 34} The Ostignys' second assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION ALLOWING MR BRUBAKER TO RESPOND TO OSTIGNY'S QUESTIONS WITH NARRATIVE ANSWERS ESSENTIALLY LETTING BRUBAKER CONTINUE TO TESTIFY DURING HIS CROSS EXAMINATION, THE COURT ALSO ASKED BRUBAKER MANY QUESTIONS TAKING UP EVEN MORE OF OSTIGNY'S TIME TO CROSS EXAMINE AND REBUT TESTIMONY.

{¶ 35} In their second assignment of error, the Ostignys complain that the trial court permitted Robert Brubaker to provide "narrative answers" during his cross-examination and that the court further erred by asking Robert Brubaker questions during his cross-examination.

{¶ 36} However, in their appellate brief, the Ostignys failed to specify which "narrative answers" were inappropriately allowed by the magistrate. Moreover, the Ostignys also failed to articulate why these specific narrative answers to David Ostigny's question were improper or otherwise problematic.

{¶ 37} We are not required to search the record for evidence to support an appellant's argument as to any alleged error. *MB Financial Bank, N.A. v. Mitchell*, 12th Dist. Warren No. CA2018-04-041, 2019-Ohio-84, ¶ 18. The Rules of Appellate Procedure provide that an appellant's brief shall include "[a]n argument containing the contentions of

the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7).

{¶ 38} "The burden of affirmatively demonstrating error on appeal rests with the party asserting error." *Sparks v. Sparks*, 12th Dist. Warren No. CA2010-10-096, 2011-Ohio-5746, ¶ 17. And this court may disregard an assignment of error if a party fails to identify in the record the error on which the assignment of error is based as required by App.R. 16(A)(7) and 12(A)(2). *Stewart v. Vivian*, 12th Dist. Clermont No. CA2015-05-039, 2016-Ohio-2892, ¶ 112-113.

{¶ 39} Accordingly, we disregard and overrule the Ostignys' second assignment of error for their failure to identify in the record the putative error on which the assignment of error is based, and for failing to present their contentions with regard to the assignment of error.

{¶ 40} The Ostignys' third assignment of error states:

> THE TRIAL COURT ABUSED ITS DISCRETION BY GIVING BRUBAKER FAR MORE TIME THEN OSTIGNY.

{¶ 41} Like their second assignment of error, the Ostignys fail to point to the portion of the record that substantiates the claim that the court gave "Brubaker far more time then Ostigny." Moreover, the Ostignys fail to explain or present any argument as to why the court abused its discretion. We disregard and overrule the Ostignys' third assignment of error. *Stewart* at ¶ 112-113.

{¶ 42} The Ostignys' fourth assignment of error states:

> THE TRIAL COURT ABUSED ITS DISCRETION BY NOT CONSIDERING BRUBAKER'S CREDIBILITY EVEN THOUGH THERE WAS CONTRADICTION AND INCONSISTENCY THROUGHOUT THE BRUBAKER'S TESTIMONY.

{¶ 43} Again, the Ostignys offer no argument in support of this assignment of error

and point to no portion of the record substantiating legal error. Based on what little we can glean from their brief, it appears that the Ostignys are asking this court to reweigh the evidence, and find in their favor. However, credibility determinations are best left to the factfinder, i.e., the trial court. *Daniel v. Hester*, 12th Dist. Butler No. CA2016-02-037, 2016-Ohio-7543, ¶ 28. Regardless, we disregard and overrule the Ostignys' fourth assignment of error for the Ostignys' failure to present argument and citation to the record. *Stewart* at ¶ 112-113.

{¶ 44} The Ostignys' fifth assignment of error states:

> THE TRIAL COURT ABUSED [ITS] DISCRETION BY REMOVING A MATERIAL PIECE OF OSTIGNY'S EVIDENCE FROM, WHAT BRUBAKER CALLED AN" INCLUSION LIST". LEE AND JACKS WAS JUST A TIP AND ON THE LIST THE COURT RULED WAS CONTRACTUAL RATHER THAN A LIST OF TIPS, SUGGESTIONS AND IDEAS[.]

{¶ 45} The Ostignys again offer no argument in support of this assignment of error, nor do they point to putative error in the record. We cannot even discern from the assignment of error what the Ostignys are claiming was error. We therefore disregard and overrule the Ostignys' fifth assignment of error. *Stewart* at ¶ 112-113.

### III. Conclusion

{¶ 46} The Ostignys have failed to demonstrate that the trial court abused its discretion in declining to grant a continuance of the trial. The Ostignys have failed to argue, with citation to the record, their remaining assignments of error. We therefore overrule all the Ostignys' assignments of error.[4]

---

4. {¶ a} As described above, the magistrate indicated that the Brubakers were not liable to the Ostignys for the third payment of $3,750 on the original contract. The magistrate instead found that the Ostignys were liable to the Brubakers for the costs expended by the Brubakers in completing the project with different contractors, and for damage to the home caused by the Ostignys' workers. A review of the evidence indicated that the Brubakers may have paid less to complete the overall project (kitchen remodel and carpet project) than they would have paid to the Ostignys had the contract been performed. To the extent there was any

{¶ 47} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.

---

issue with the calculation of damages in this case, the Ostignys' objections to the magistrate's decision did not raise this issue. The Ostignys also did not raise this issue on appeal.

{¶ b} Pursuant to App.R. 12(A)(1)(b), our role as an appellate court is to "[d]etermine the appeal on its merits on the assignments of error set forth in the briefs." We are not self-directed boards of legal inquiry and research and we are therefore not obligated to "'search the record or formulate legal arguments on behalf of the parties.'" *Risner v. Ohio Dept. of Natural Resources, Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, ¶ 28, quoting *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 19. We preside as arbiters of the legal questions *presented and argued by the parties. Id*. We therefore offer no opinion on the calculation of damages in this case.

- 12 -